IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01449-RM-BNB

PETER P. MAUCHLIN,

Plaintiff,

v.

B.R. DAVIS, Warden,
DR. P. ZHAN, Psychologist,
MUNSEN, Associate Warden,
MILUSNIC, Associate Warden,
KRIST, Chief Correctional Supervisor,
LLOYD, Chief Correctional Supervisor,
P. RANGEL, Unit Manager, and
JENSEN, Correctional Supervisor,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the following motions:

1. **Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** filed by

defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson [Doc. #41, filed

01/02/2013] (the "BOP Motion");[1] and

2. **Defendant Davis' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** filed by

defendant Davis [Doc. #69, filed 04/22/2013] (the "Davis Motion").

_____

[1]The plaintiff has misspelled the names of defendants Zhan, Munsen, and Jensen. The correct spellings are Zohn, Munson, and Janson. *DOC Motion*, p. 1, n.1. I use the correct spellings in this Recommendation.

I respectfully RECOMMEND that the Davis Motion [Doc. # 69] be GRANTED and that the BOP Motion [Doc. # 41] be GRANTED IN PART and DENIED IN PART.

## I.   STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.   BACKGROUND

The plaintiff currently is incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum in Florence, Colorado ("ADX").  He filed his Amended Prisoner Complaint on July 12, 2012 [Doc. #12] (the "Complaint").  The Complaint contains the following allegations:

1.  From January 14, 2011, to April 21, 2011, the plaintiff was housed in the Special

Housing Unit ("SHU") in Lower A Range.  This area is also known as "Nut Row" and "The

Monkey House."  *Complaint*, p. 5.[2]

2.  "[T]hroughout this entire time, daily and late into the night, Plaintiff was subjected to

a high decibel volume of noise consisting of yelling (conversationally) and screaming (in anger

and fear) by seriously mentally ill/psychotic prisoners housed nearby."  Id.  The noise was

frequently supplemented with banging on the walls, toilets, shower stalls, and gates.  The noise

caused the plaintiff's blood pressure to "increase to hypertension levels"; episodes of insomnia

and exhaustion; and "a host of ailments which culminated in plaintiff suffering a debilitating

stroke" on March 24, 2011.  Id.

3.  The stench of feces and urine was prevalent throughout Lower A Range, which

"implied the prescence [sic] of AIRBORNE particles of fecal matter, contaminated with

whatever disease/infection causing pathogens/germs the producer of the feces may have been

afflicted with."  Id. (original emphasis).

4.  Due to the unsanitary conditions of the air and the cells, the plaintiff contracted

infections in both of his ears and eyes.  His infections were diagnosed and treated on March 16,

2011.  Id.

5.  The housing conditions on Lower A Range were knowingly and intentionally

"promoted by the deliberate indifference of upper level supervisory/management prison officials

herein as defendants who invariably made, at minimum, weekly rounds/inspections and often,

---

[2]The Complaint is not consecutively paginated.  Citation is to the pages of the Complaint
as they are assigned by the court's docketing system.

<u>daily</u> rounds/inspections of the entire premises of the Special Housing Unit, during the period

of" January 14 to April 21, 2011.  <u>Id.</u> at pp. 5-6.

The plaintiff brings one claim against all of the defendants for violating his Eighth, Fifth,

and Fourteenth Amendment rights.[3]  <u>Id.</u> at pp. 5, 6-8.  Specifically, he states that he is bringing

claims for violations of his due process and equal protection rights under the Fifth and

Fourteenth Amendments and asserting a claim for cruel and unusual punishment under the

Eighth Amendment.  *Plaintiff's Response in Opposition to Defendants Motion to Dismiss* [Doc.

#47] (the "Response"), p. 2.  He seeks compensatory and punitive damages.  *Complaint*, p. 11.

### III.   ANALYSIS

#### A.   Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall deny to any person within its jurisdiction the equal protection of the laws, which is

essentially a direction that all persons similarly situated should be treated alike."  <u>City of</u>

<u>Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (quotations and citation omitted).

The Complaint does not allege any facts that would invoke the equal protection clause.[4]

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not
be recognized.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he
broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging
sufficient facts on which a recognized legal claim could be based").

[4]The plaintiff has filed numerous "exhibits" since he initiated this case.  The exhibits are
inappropriately filed and have been stricken by separate order, but I have reviewed them out of
an abundance of caution.  The exhibits do not impact my recommendation.

## B. Due Process and Eighth Amendment Claims

The plaintiff asserts that the defendants' actions violated his due process and Eighth Amendment rights. Where, as here, the Eighth Amendment "serves as the primary source of substantive protection" for an inmate's conditions of confinement, the Due Process Clause affords "no greater protection than does the Cruel and Unusual Punishment Clause" of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of substantive due process." Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1493 (10th Cir. 1990) (internal quotations omitted).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer,

511 U.S. at 834.  The subjective component of a deliberate indifference claim is met if a prison

official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S.

at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the inference."  Id.

### 1.   Personal Participation

The defendants argue that the plaintiff has failed to plausibly allege their personal or

supervisory participation in the Eighth Amendment violation.  *DOC Motion*, pp. 7-10; *Davis*

*Motion*, pp. 7-8.

The plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of

Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  *Complaint*, p. 4.  An individual cannot be held

liable under Bivens unless he or she caused or participated in an alleged constitutional violation.

Pahls v. Thomas, Nos. 11-2055, 11-2059, --- F.3d ---, 2013 WL 2398559 at *9 (10th Cir. June 4,

2013).  Respondeat superior is not within the purview of Bivens liability.  Id.  In order to hold a

supervisor liable under Bivens, a plaintiff must show that "(1) the defendant promulgated,

created, implemented or possessed responsibility for the continued operation of a policy that (2)

caused the complained of constitutional harm, and (3) acted with the state of mind required to

establish the alleged constitutional deprivation."  Brown v. Montoya, 662 F.3d 1152, 1164 (10th

Cir. 2011) (internal quotations and citation omitted); Pahls, 2013 WL 2398559 at *10.

The Tenth Circuit Court of Appeals has stated:

> Because § 1983 and Bivens are vehicles for imposing personal
> liability on government officials, we have stressed the need for
> careful attention to particulars, especially in lawsuits involving
> multiple defendants.  It is particularly important that plaintiffs
> make clear exactly who is alleged to have done what to whom, . . .
> as distinguished from collective allegations.

\* \* \*

> The same particularized approach applies with full force when a
> plaintiff proceeds under a theory of supervisory liability. Various
> officials often have different powers and duties.  A plaintiff must
> therefore identify the specific policies over which particular
> defendants possessed responsibility and that led to the alleged
> constitutional violation.

Id. at \*10 (internal quotations and citations omitted).

### a.  Defendants Davis, Munson, and Milusnic

The plaintiff alleges that he "made both verbal and written (administrative remedy

requests) complaints" to defendant Warden Davis, but Davis "failed or refused to

remedy/correct" the plaintiff's conditions of confinement. *Complaint*, p. 6.  The plaintiff also

alleges that he "made frequent, numerous and similar complaint" to Associate Warden Munson,

who "also responded/demonstrated deliberate indifference by failing/refusing to remedy/correct

the complained of conditions . . . ." Id.  The plaintiff further alleges that he "made similar and

numerous complaints" to Associate Warden Milusnic "who also demonstrated deliberate

indifference to plaintiff complaints with sarcastic derisive comments ('be sure to spell my name

right when you file') and by failing/refusing to remedy/correct the complained of conditions . . .

." Id. at pp. 6-7.

These bare-bone allegations, without more, do not state a plausible claim that defendants

Davis, Munson, or Milusnic directly participated in the alleged constitutional violation or were

deliberately indifferent in promulgating, creating, implementing or possessing responsibility for

the conditions of the plaintiff's confinement in the SHU.  See Davis v. Arkansas Valley

Correctional Facility, 99 Fed.Appx. 838, 843 (10th Cir. 2004) (copying the warden on complaints

about medical care, without more, does not sufficiently allege personal participation in a

constitutional deprivation); <u>Plummer v. Daniels</u>, 13-cv-00440-BNB, 2013 WL 1444544 at *2

(D.Colo. April 9, 2013) (complain[ing] to the Defendant Warden about the alleged inadequate

medical treatment in grievances and in verbal communications, without more, is not a sufficient

basis to impose <u>Bivens</u> liability); <u>Quintana v. Doe</u>, No. 09-cv-00946, 2010 WL 2650052 at *7

(D.Colo. June 30, 2010) ("Receiving correspondence does not establish the personal

participation required to trigger personal liability").

The Davis Motion [Doc. # 69] should be granted, and defendant Davis should be

dismissed from this action.  In addition, the BOP Motion [Doc. # 41] should be granted insofar

as it seeks dismissal of defendants Munson and Milusnic.

### b.   Defendants Zohn, Krist, Lloyd, Rangel, and Janson

The plaintiff alleges that he made "similar complaints" to defendant Zohn, Psychology

Department Supervisor; Zohn made weekly and sometimes daily "rounds/inspections" in the

SHU; and Zohn failed/refused to remedy the conditions of confinement.  *Complaint*, p. 6.

He alleges that he "made numerous and frequent complaints" to defendant Krist, Chief

Correctional Supervisor, whose "failure refusal to remedy/correct the aforementioned

conditions" violated the plaintiff's constitutional rights and  "made similar and numerous

complaints" to defendant Lloyd, Chief Correctional Supervisor, "who frequently accompanied . .

. Krist on his daily/weekly rounds of the SHU" and whose "failure/refusal to remedy/correct the

complained of conditions of confinement" violated the plaintiff's constitutional rights.  <u>Id.</u> at p.

7.

The plaintiff alleges that he "made numerous and frequent complaints" to defendant

Rangel, unit manager, who "once asked Plaintiff if his swollen, infected eyes were the result of

insomnia from the continuous din of noise on 'Nut Row' thereby demonstrating that she, like all the Defendants/Supervisory Personnel, were aware of the complained of conditions and knowingly disregarded them by failing/refusing to remedy/correct them." Id.

The plaintiff also alleges that he "made very similar, frequent and numerous complaints" to defendant Janson, the daytime SHU supervisory prison guard, "who made daily rounds/inspections of the entire SHU for many weeks during the time Plaintiff was confined" there. Janson also "made similar derisive and sarcastic comments to Plaintiff regarding the correct spelling of his name, in response to Plaintiff's complaints," and failed/refused to correct the conditions. Id. at pp. 7-8.

These allegations are sufficient to state a plausible claim that defendants Zohn, Krist, Lloyd, Rangel, and Janson directly participated in subjecting the plaintiff to the alleged unconstitutional conditions of confinement (as opposed to supervisory participation). The BOP Motion [Doc. # 41] should be denied insofar as it seeks dismissal of defendants Zohn, Krist, Lloyd, Rangel, and Janson for failure to allege personal participation.

## 2. Sufficiently Serious Deprivation

The defendants argue that the plaintiff has failed to allege a sufficiently serious deprivation (the objective component). *Motion*, pp. 10-14.

Allegations of excessive noise in a prison can constitute a sufficiently serious deprivation under the Eighth Amendment. In Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir.1996), the court found that an inmate sufficiently stated an Eighth Amendment claim by alleging loud noise occurring every night, often all night long, which interrupted or prevented the inmate from sleeping. In Toussaint v. McCarthy, 597 F.Supp. 1388, 1397, 1397-98 (N.D.Cal.1984) aff'd in

part, rev'd in part on other grounds, 801 F.2d 1080, 1110 (9th Cir.1986), cert. denied, 481 U.S.

1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), the court found that the "unrelenting,

nerve-racking din that fills the segregation units . . . exerts a profound impact on lockup inmates,

some of whom consider it to be the single worst aspect of their confinement." The court

concluded that "public conceptions of decency inherent in the Eighth Amendment require that

plaintiffs be housed in an environment that, if not quiet, is at least reasonably free of excess

noise." Id. at 1410.

The plaintiff alleges that the noise in the Lower A Range occurred "daily and late into the

night." *Complaint*, p. 5. He further alleges that the noise caused his blood pressure to increase

to "hypertension levels" and caused him to suffer frequent episodes of insomnia and exhaustion

which culminated in a debilitating stroke. These allegations are sufficient to satisfy the objective

component of the Eighth Amendment analysis.

Moreover, the plaintiff alleges that he was subjected to the continuous stench of feces

and urine and that he contracted infections in both of his ears and eyes due to the unsanitary

conditions of the air and prison cells. In his response to the Motion, the plaintiff states that

"each and every cell on 'Nut Row' occupied by him (4) were contaminated with traces of dried

feces, spit, nasal mucus ('boogers'), urine, and in one cell, blood droplets . . . ." *Response*, p. 3.

"An inquiry into conditions of confinement by necessity relies on the particular facts of

each situation; the circumstances, nature, and duration of the challenged conditions must be

carefully considered." DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (internal

quotations and citation omitted). "[E]xposure to human waste carries particular weight  in the

10

conditions calculus." Id.  The plaintiff alleges that he was exposed to human waste for more

than three months.  These allegations are also sufficient to state a serious deprivation.

### 3.  Deliberate Indifference

The defendants argue that the plaintiff has not alleged sufficient facts to show that they

were deliberately indifferent to the plaintiff's health or safety. *Motion*, p. 14.  However, the

plaintiff alleges that he complained about the conditions to defendants Zohn, Krist, Lloyd,

Rangel, and Janson; these defendants witnessed the conditions; and these defendants failed to

remedy the conditions.  Therefore, the plaintiff has sufficiently alleged that defendants Zohn,

Krist, Lloyd, Rangel, and Janson were deliberately indifferent to an excessive risk to his health.

### 4.  Qualified Immunity

The defendants state that they are entitled to qualified immunity. *Motion*, pp. 14-15.

Qualified immunity shields government officials sued in their individual capacities from liability

for civil damages provided that their conduct when committed did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established"

for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must

determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional

right.  In addition, I must inquire whether the right was clearly established at the time of the

violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

172 F.3d 736, 745 (10th Cir. 1999).[5]

The plaintiff sufficiently alleges that defendants Zohn, Krist, Lloyd, Rangel, and Janson

violated his Eighth Amendment rights.  The plaintiff's Eighth Amendment rights were clearly

established prior to the imposition of the conditions alleged in the Complaint.  DeSpain, 264

F.3d at 974; Rhodes v. Chapman, 452 U.S. 337, 342 (1981) (considering whether there was

excessive noise in the cellblocks when evaluating whether the conditions of confinement

violated the Eighth Amendment).  Accordingly, the Motion should be denied insofar as it seeks

qualified immunity for defendants Zohn, Krist, Lloyd, Rangel, and Janson.

## IV.  CONCLUSION

I respectfully RECOMMEND:

(1)   Defendant Davis' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. #69]

be GRANTED; and

(2)   Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. #41] be

GRANTED IN PART and DENIED IN PART as follows:

(a)   GRANTED insofar as it seeks dismissal of defendants Munson and Milusnic;

and

---

[5]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, 555 U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

(b)   DENIED to the extent it seeks dismissal of the claims against defendants

Zohn, Krist, Lloyd, Rangel, and Janson.[6]

FURTHER, IT IS ORDERED that the Clerk of the Court shall cause the court's

docketing system to reflect the correct spelling of the last names of defendants Zohn, Munson,

and Janson.

Dated July 15, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).