IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01449-RM-BNB

PETER P. MAUCHLIN,

Plaintiff,

v.

B.R. DAVIS, Warden,
DR. P. ZOHN, Psychologist,
MUNSON, Associate Warden,
MILUSNIC, Associate Warden,
KRIST, Chief Correctional Supervisor,
LLOYD, Chief Correctional Supervisor,
P. RANGEL, Unit Manager, and
JANSON, Correctional Supervisor,

Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the **Defendants' Motion to Dismiss** [Doc. #121, filed 10/21/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED as to defendant Davis and DENIED as to the other defendants.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff currently is incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum in Florence, Colorado ("ADX"). He filed his Amended Prisoner Complaint on July 12, 2012 [Doc. #12] (the "Amended Complaint"). The defendants filed motions to dismiss the Amended Complaint [Docs. ##41 and 69], and I issued a recommendation [Doc. #90] to grant the motions insofar as they sought dismissal of defendants Davis, Munson, and Milusnic and to deny the motions to the extent they sought dismissal of the claims against defendants Zohn, Krist, Lloyd, Rangel, and Janson.

Subsequently, I permitted the plaintiff to file a Second Amended Prisoner Complaint [Doc. #115] (the "Second Amended Complaint").[1] The Second Amended Complaint contains the following allegations:

---

[1] The previous motions to dismiss and my previous recommendation were rendered moot by the filing of the Second Amended Complaint.

1. From January 14, 2011, to April 21, 2011, the plaintiff was housed in the Special Housing Unit ("SHU") in Lower A Range. This area is also known as "Nut Row" and "The Monkey House." *Second Amended Complaint*, p. 6.[2]

2. "[T]hroughout the entire 97 days," the plaintiff "was subjected to, both on a daily basis and late into the night, a high decibel, constant volume of excessive noise consisting of yelling (conversationally), screaming (in fear, anger) frequently supplemented by the loud banging (kicking?) on cell walls, metal toilets, metal shower stalls and heavy, loosely hung gates, by the seriously mentally ill prisoners housed in the surrounding, nearby cells." The noise caused the plaintiff to suffer hypertension, insomnia, and exhaustion, and ultimately caused the plaintiff to suffer a debilitating stroke on March 24, 2011. Id. at pp. 7-8.

3. The plaintiff was also subjected to "extremely, even dangerously" unsanitary conditions throughout his stay on Lower A Range. He was confined in five different cells during his incarceration there. Each cell contained smears and streaks of feces, mucous, and urine on the walls, ceilings, and floors. The smears and streaks were "plainly visible" through the cell windows "to anyone standing in or outside the cell's door," and the stench was obvious. Whenever any of the defendants made their daily or weekly rounds, they would peer through the cell window and inspect the inmate and the interior of each cell. Id. at pp. 8-10.

4. The stench of feces and urine was prevalent throughout Lower A Range, which "implied the presence of AIRBORNE particles of fecal matter ("dust") contaminated with

---

[2]The Second Amended Complaint is not consecutively paginated. Citation is to the pages of the Second Amended Complaint as they are assigned by the court's docketing system.

whatever disease/infection causing pathogens/germs the producer of the feces may have been afflicted with." Id. at p. 8 (original emphasis).

5. While he was confined on Lower A Range, the plaintiff complained about the conditions "at least several times to each and every one of the defendants" while they were making their rounds. Id. at p. 10. The defendants made no effort to remedy the conditions. Any one of the defendants could have ordered the plaintiff's removal from Lower A Range to a cleaner and quieter area of the SHU but they refused to do so. Id. at p. 11. The defendants purposely placed "disfavored prisoners such as the plaintiff" on Lower A Range as a punitive measure. Id. at p. 13.

6. The plaintiff was exposed to Hepatitis C while confined on Lower A Range. Id. at p. 12.

7. The plaintiff complained to Warden Davis "personally, verbally and even in writing (administrative remedy request/complaint)." Id. at p. 13.

8. Defendant Doctor P. Zohn "made rounds/inspections" on Lower A Range several times a week. The plaintiff complained to Dr. Zohn personally about the conditions. Id. at p. 14.

9. Defendant Associate Warden Munson "made meticulous inspections of both plaintiff's person and cell interior" and refused to correct the conditions after the plaintiff made numerous complaints. Id.

10. Defendant Associate Warden Milusnic made weekly rounds and refused to correct the conditions after the plaintiff made numerous complaints. Milusnic made derisive comments in response to the plaintiff's complaints. Id. at pp. 14-15.

11. The plaintiff made similar complaints to defendant Chief Correctional Supervisor Krist. Defendant Krist made sarcastic, derisive comments in response to the plaintiff's complaints. Id. at p. 15.

12. Defendant Chief Correctional Supervisor Lloyd made weekly and sometimes daily rounds--often in the company of defendant Krist. The plaintiff made numerous and similar complaints to defendant Lloyd. Like all of the other defendants, Lloyd refused to correct the conditions. Id. at pp. 15-16.

13. The plaintiff complained about the filth and noise numerous times to defendant Unit Manager Rangel while she made her "weekly rounds/inspections" of Lower A Range. Rangel asked if his puffy red eyes were the result of the noise and sleep deprivation. She did not take any steps to correct the conditions. Id. at pp. 16-17.

14. Defendant Correctional Supervisor Janson made daily rounds/inspections on Lower A Range and was responsible for the occasional extraction of prisoners from the filthy cells. The plaintiff "complained frequently, on numerous occasions" to Janson. Once, Janson held out his name tag to the plaintiff and told the plaintiff to "spell his name correctly" implying that he was not concerned about being held accountable for the conditions of Lower A Range. Id. at pp. 17-18.

The plaintiff brings claims against all of the defendants for violating his Eighth, Fifth, and Fourteenth Amendment rights. Id. at pp. 13-18. Although it is not clear which of his Fifth Amendment and Fourteenth Amendment rights are at issue, the plaintiff briefly refers to equal protection and due process rights, id. at pp. 12-13, so I construe the plaintiff's Fifth and

Fourteenth Amendment claims to assert violations of his equal protection and due process rights.³ The plaintiff seeks compensatory and punitive damages. Id. at p. 21.

### III.   ANALYSIS

#### A.   Equal Protection and Due Process Claims

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. "[T]he Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment." Schweiker v. Wilson, 450 U.S. 221, 227 n.6 (1981).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted). The Second Amended Complaint does not allege any facts that would invoke the equal protection clause.

The Fifth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. V. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).

---

³Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

Where, as here, the Eighth Amendment "serves as the primary source of substantive protection" for an inmate's conditions of confinement, the Due Process Clause affords "no greater protection than does the Cruel and Unusual Punishment Clause" of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of substantive due process." Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1493 (10th Cir. 1990) (internal quotations omitted).

### B. Eighth Amendment Claims

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component of a deliberate indifference claim is met if a prison

official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### 1. Personal Participation

The defendants argue that the plaintiff has failed to plausibly allege their personal or supervisory participation in the Eighth Amendment violation. *Motion*, p. 10. The plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). *Complaint*, p. 4. An individual cannot be held liable under Bivens unless he or she caused or participated in an alleged constitutional violation. Pahls v. Thomas, Nos. 11-2055, 11-2059, --- F.3d ---, 2013 WL 2398559 at *9 (10th Cir. June 4, 2013). Respondeat superior is not within the purview of Bivens liability. Id. In order to hold a supervisor liable under Bivens, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted); Pahls, 2013 WL 2398559 at *10.

The Tenth Circuit Court of Appeals has stated:

> Because § 1983 and Bivens are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.
> 
> \* \* \*
> 
> The same particularized approach applies with full force when a plaintiff proceeds under a theory of supervisory liability. Various officials often have different powers and duties. A plaintiff must

> therefore identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violation.

Id. at *10 (internal quotations and citations omitted).

### a. Defendant Davis

The plaintiff alleges that he "personally, verbally and even in writing (administrative remedy request/complaint)" complained to Warden Davis, but Davis refused to remedy the plaintiff's conditions of confinement. *Complaint*, p. 13. This allegation, without more, does not state a plausible claim that Warden Davis directly participated in the alleged constitutional violation or was deliberately indifferent in promulgating, creating, implementing, or possessing responsibility for the conditions of the plaintiff's confinement in the SHU. See Davis v. Arkansas Valley Correctional Facility, 99 Fed.Appx. 838, 843 (10th Cir. 2004) (copying the warden on complaints about medical care, without more, does not sufficiently allege personal participation in a constitutional deprivation); Plummer v. Daniels, 13-cv-00440-BNB, 2013 WL 1444544 at *2 (D.Colo. April 9, 2013) (complain[ing] to the Defendant Warden about the alleged inadequate medical treatment in grievances and in verbal communications, without more, is not a sufficient basis to impose Bivens liability); Quintana v. Doe, No. 09-cv-00946, 2010 WL 2650052 at *7 (D.Colo. June 30, 2010) ("Receiving correspondence does not establish the personal participation required to trigger personal liability").

The Motion should be granted insofar as it seeks dismissal of defendant Davis for failure to allege personal or supervisory participation in the Eighth Amendment violation.

### b.  Defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson

The plaintiff alleges that these defendants made regular rounds on Lower A Range; whenever any of the defendants made their daily or weekly rounds, they would peer through the cell window and inspect the inmate and the interior of each cell; the noise level was excessive on a daily basis and late into the night; each of the cells the plaintiff occupied had smears and streaks of feces, mucous, and urine on the walls, ceilings, and floors; the smears and streaks were "plainly visible" through the cell windows "to anyone standing in or outside the cell's door"; the stench of feces and urine was prevalent throughout Lower A Range; the plaintiff complained about the conditions "at least several times to each and every one of the defendants" while they were making their rounds; any one of the defendants could have ordered the plaintiff's removal from Lower A Range to a cleaner and quieter area of the SHU but they refused to do so; and none of the defendants made any effort to remedy the conditions of the plaintiff's confinement.

These allegations are sufficient to state a plausible claim that defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson directly participated in subjecting the plaintiff to the alleged unconstitutional conditions of confinement (as opposed to supervisory participation).  The Motion should be denied insofar as it seeks dismissal of defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson for failure to allege personal participation.

### 2.  Deliberate Indifference

The defendants argue that the plaintiff has not alleged sufficient facts to satisfy the subjective component of an Eighth Amendment violation.[4]  *Motion*, p. 10, n.6.  However, the

---

[4]The defendants do not challenge whether the plaintiff has satisfied the objective component. *Motion*, p. 9, n.5.  Therefore, I assume for purposes of the Motion that the plaintiff has sufficiently alleged conditions which pose a substantial risk of serous harm to his health.

plaintiff alleges that he complained to defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson about conditions which posed a substantial risk of serious harm to his health; the defendants witnessed the conditions; and the defendants failed to remedy the conditions. The plaintiff has sufficiently alleged that defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson knew of and disregarded the excessive risk to the plaintiff's health and, therefore, were deliberately indifferent under the Eighth Amendment.

### 4. Qualified Immunity

The defendants state that they are entitled to qualified immunity. *Motion*, pp. 14-15. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[5]

---

[5] The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

The plaintiff sufficiently alleges that defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson violated his Eighth Amendment rights. The plaintiff's Eighth Amendment rights were clearly established prior to the imposition of the conditions alleged in the Second Amended Complaint. Farmer, 511 U.S. at 834, 837 (stating that the subjective component requires a sufficiently culpable state of mind and "[i]n prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety"). Accordingly, the Motion should be denied insofar as it seeks qualified immunity for defendants Zohn, Munson, Milusnic, Krist, Lloyd, Rangel, and Janson.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Defendants' Motion to Dismiss [Doc. #121] be GRANTED as to defendant Davis and DENIED as to the other defendants.[6]

Dated March 24, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[6] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).